I'd like to begin with the Brown and IBM references, which are attached to the red brief, and particularly on Appendix 560, which is Figure 2 of the Brown patent. Then I'd like to turn to the claim construction dispute. The summary judgment in this case of obviousness was improper no matter how the claim construction dispute is resolved. In part, that is because starting with Brown, the Brown patent does not disclose any of the four steps of Claim 1 of the 045 patent. Starting with the first step, comparing it to Figure 2 of Brown, the first step in Claim 1 requires that there be provided forms to a form user over a network. Here in the Brown patent, we see in the upper right-hand corner of Figure 2 a police records database. That's where the police reports are entered. Brown, however, is silent as to how the police reports, as opposed to the inquiries by police officers on the street, how the police reports are entered. There's no disclosure in Brown that the police reports are entered using a network or using forms. So that's the first step which is missing in Brown. Turning to Figure 4 of Brown, which is on A562, this shows that the second step of Claim 1 is also missing. The second step of Claim 1 recites one of the two essential features that are claimed here, which is really the gist of this invention. And that, namely, is the three-function template. This invention provides, in the second step, that the institution is provided with a web template that allows the institution to specify a message, to specify the recipients for that message, and to specify the fields and field values that will trigger sending the message. So those are the three functions. This web template allows an institution, such as a college track coach, for instance, to specify a profile. He can specify the message he wants to send to the recruit or to a fellow coach. He can specify who gets that message, and he can specify the criteria, an 800 meters track start from New York, for instance. Looking at Brown Figure 4, it does not disclose the three-function template. What it does disclose is at the top, it allows the user to specify whether the notification, which will be by email or pager. So it allows identifying the means of notification, but the means of notification is simply the medium. The medium here is not the message. The patent is talking about a message-specific content that you can specify, the institution can specify. For instance, in Figure 5 of the patent, it gives an example where it says the person using the three-function template types in and says, I will, here's another recruit from a fellow Georgia, something to that effect. So the user using the template specified the content of the message. Brown does not disclose that, nor does it disclose specifying a message using the web template and then tying it, linking it to a particular match criteria that will trigger the message. Turning the claim, the step three and four, step three of claim one talks about comparing data entered by a form user. Brown doesn't have that entering by a form user, and therefore it necessarily cannot have the third step that relies on that. And the fourth step is upon detecting a match, delivering the specified message. That refers back to the message that's specified using the web template. So Brown doesn't have any of the four steps. Turning to the IBM reference and Figure 2 of the IBM reference, and this appears in the red brief and the appendix A549, and going to step two, I said IBM doesn't disclose three of the four steps of claim one. IBM does not disclose steps two, three, or four. Starting with step two, the three-function template, IBM, like Brown, allows the person using this form here to specify the means of notification. And in IBM it refers to it specifically as, quote, means of notification at column two, line 47. It specifies how the user wants to be notified, but not the message. It's less powerful than the invention. It does not allow a user of this IBM system or Brown is not able, using the form, to customize the message. Here's a customized message I want to send if I find the 800 meters track star, and I want to send it to these people on the athletic department. Here's a customized message I want to send if that track star was applying to, say, Harvard or Cornell, is a music expert or something. And then I have a special message that I want to send to special people. Neither IBM nor Brown have that. Instead, what IBM and Brown are essentially is Google plus alerts. These are search engines, search tools that allow automatic repetition of the search, and then an alert to someone saying, oh, you did a search on Monday. You were searching for a particular on-sale bar in the Federal Circuit. Well, a new case came out on Thursday. Here's an alert. That's what Brown and IBM are. Our patent is nothing like that. So that's the first point, that even putting aside the claim construction, summary judgment here was improper, and for procedural reasons as well. The district court didn't even mention our expert report. If you add up these many missing elements of the steps in the claim, you combine that with the concrete expert testimony we had from Mr. McAravey pointing out these differences, combining that with the clear and convincing evidence standard, combining that with Rule 56 requirements, it really adds up to a trial, not to a summary judgment. So we're asking the court to vacate the summary judgment, but we're also asking the court to correct the claim construction if the court does remand. And on that, I mentioned that this invention, the invention's not a blender that you could advertise on an infomercial, but it is an important and clever invention, and what it really combines is this three-function template, which is on the interface side, with a novel engine underneath, and the engine underneath is a comparison engine, which resulted from looking at the problem differently. The problem before was, I do a Google search for on-sale bar cases on Monday, if the Federal Circuit came out with a new case on Tuesday and Wednesday, I need to search again. Well, some people are motivated to search every day, but some people aren't, so having this notion of repeating the search and automatically, that was known, and that was fine. But the approach to the problem was, how do we make it more efficient? How do we make it more efficient searching this full database, searching all of the court decisions for on-sale bars over and over and over again? That was the prior art. How do we do that better? How do we do the repeated search? Mr. Wolfson and the other inventors stepped back and said, I don't want to do that. I don't want to repeat the search at all. What if we don't search the database again? And he came up with a technique that allows responsiveness, improved responsiveness, allows being integrated with this three-function template without ever repeating a search of the database. And that's a critical point here on the invention. In our invention, and I'll turn to a part of the specification that makes this clearer, in our invention, you never repeat the same comparison between two data items. You may have tens of thousands of applications coming in to a college. You may have hundreds of recruiter profiles for criteria they're looking for. So you have hundreds of people that are looking for track stars, musicians, whatever. In our invention, you never compare two bits of that information more than once. And the reason is, because let's say that all the coaches and all the teachers got their criteria in before the application season opened. So all criteria are pre-existing. What our invention does is it intercepts the stream of incoming applications. And one by one, it compares them to each of the search criteria, each of the match criteria. And it can do that in a memory. It doesn't have to do a database search. And in fact, it doesn't do a database search. So it does this comparison one by one. And then it sends out the messages as needed. Then the next one comes in and it compares one by one. It never does the same comparison twice. Now what if we hire a new track coach? And the new track coach doesn't want 800 meters. They want a 5,000 meter star from high school. They put in their match criteria in the middle of the recruiting season. So the patent provides for that. And this is what Claim 8 is all about. The patent provides optionally that if I have a new match criteria, I will use that not as a match criteria, which I will going forward, but to catch up with those 5,000 applications that came in before the new coach was hired, I'm going to use it to search the database. But I only do it once. So even then, when you use that new match criteria to search historical information in the database, you never do that again. You will never use that match criteria to search that database. So that Claim 8 is clearly the traditional method, right? What you're saying is it's the traditional method, but it's different because we're only doing it once. It's still the traditional method. It's traditional in the sense that it is searching a database in that respect, yes, but it is not traditional in the repetition, which was the traditional method. And what Claim 8 is doing is it's adding that step, just like the specification, in the special circumstance of a new match criteria. If you don't enter any new match criteria, you will never even do that one-time search. The problem I'm having, and this is maybe at a different level than you are in terms of talking about claims, that Claim 1 is the independent and 2 and 8 are detailed. Therefore, Claim 1 has to be brought, at least the combination of both of them. Yes. And the difficulty here, and maybe this was absolutely why the district court ruled that she did or not, but is that Claim 1 clearly is fairly construed, is it not, as including the traditional method? Because when it says when the comparison is done, it doesn't, well, when it says comparing the data, it doesn't specify when the comparison is done, right? It does not have the same specific terminology that is found in Claim 2. Therefore, it clearly covers traditional methods, which are in the prior art, does it not? No, we submit that would be an unreasonable reading by a person of skill in the art. If one ripped the claims out of the specification, never read the invention, it still wouldn't be a reasonable reading, but particularly after reading the way the specification works, in particular, Column 5. Well, clearly it's got to be broader than Claim 2, and Claim 2 does deal with the comparison when the form is received. So clearly Claim 1 is broader than that. Claim 2 recites as the completed form is received, and therefore, yes, that is not a requirement of Claim 1. However, that doesn't mean that Claim 1 isn't directed to the invention in which forms were received and then compared to the match criteria, and then you waited for the new form. So in terms of- I guess I'm unclear. How is that different than the traditional method? I mean, how is that different than what's in the prior art? It's different because in the traditional method, you use the criteria, match criteria as a search term into a database, and you repeatedly search the same database of data. In this system, as described in Column 5, set forth in Figure 1, you use a comparison operation where you compare the incoming form to the existing match criteria, and the claim language follows very closely the language in Column 5 at Line 26, et cetera. Well, where in Claim 1 does it limit the comparison to only once? I mean, you say you search the entire database, but you only do it once. You never do it repeatedly. Where is that found in the claim? It's inherent in the claim because it says you compare a form, a data entered by a forum user, to the specified criteria, and then you send out your message if there's a match. Because you're comparing the data to the match criteria, and then you get your conclusion, your resulting message, there is no need to go back and do a search. It wouldn't make sense to do a search in this infrastructure or this algorithm where you are comparing incoming data, you compare that to multiple criteria, the existing criteria, and then you output the result. We submit the claim language, but it simply wouldn't make sense, we submit, for the person of skill and the art to read the claim that so clearly describes using a combination engine, not a search engine, criticizes repeated searches, for the person of skill and the art to say, oh, apparently they claimed what they criticized. Okay, we'll take a readout of that. Mr. Nation? May it please the Court. This Court was correct in granting summary judgment that the asserted claims of the CollegeNet patent was invalid. Judgment should be affirmed. The District Court correctly construed the claims to not be limited to only one specific process of searching. The Court also correctly applied the four factors of the Graham test as it went through each of the pieces of prior art. First, I would like to address the claims instruction. Now, the District Court read the claim, and the District Court said on page A6 of its opinion, Claim 1 describes a method whereby an institution can specify, visa a web interface, a set of criteria such that if a user submits a web form meeting those criteria, a predetermined message will automatically be sent to one or more recipients. He did not read into that claim anything about a particular process of comparing. He did not read into that claim the one critical thing that they have to, and that is that the form data has to be new. It is not in that claim anywhere. It is not required to be new, but it is required to be new if they use their counterintuitive method. And Judge Sparks realized that because he said that claim really just calls for simply comparing one user submission to one set of search criteria to determine if there is a match. He did not find, and the claim does not have, where those submissions come from, when they come from, or how you compare it. I guess I think I appreciate what you are saying. The question I have is with respect to Claim 2. It is far more specific and encompasses exclusively than this non-intuitive, non-traditional method. Am I right? Judge Sparks addressed that, and I think... Am I correct? That Claim 2 is limited exclusively to... Judge Sparks found it was exclusive to the counterintuitive approach. So why is that obvious? Why is it obvious? Because everything else in this claim is shown by Brown. And Brown specifically shows that feature when it uses what is called the real-time frequency search. And that is what I think is the key to this whole thing is when Brown discovered that I am going to turn on my searching function as soon as I get that new message, as soon as I get the new report, I am turning it on. That is what he is talking about. This counterintuitive has to do that. Because, one, there is no storage for forms, so it has got to go in. Well, it shows the database, but he disclaims it. So, it goes in as quick as it can. That is fine. Brown shows that. Brown turns on his searching function as soon as the new report comes in. He also further does more than that. He does not put it in the complete database. Or at least he does not search the complete database to find out, which they say you have to do with the traditional approach. He creates a special, second, small database. And that is where the new message goes in. The new report, the new data goes in that. He searches that. He says, expressly saves time. He saves operating overhead, memory capacity. He improves the system by using that second little database. Now, if you use his real-time frequency, you automatically put it in that small database as soon as you receive it. There is no other new data in there. So, when you get through with Brown, he is basically comparing the search criteria that he has got stored to a small database that he knows has that new message. And how does he determine the match? He compares the two. Did he search for it? He called it a search. I do not care. If a search or not, anything where you determine a match is going to include, sooner or later, at some point, a comparison. How do you match? You compare. So, this comparison operation that he talks about, his reply brief or his reliance on comparison being not a search, and because it disclosed using a comparison engine, he could not be comparing with a search engine. Go back to Claim A, Your Honor. The added limitation of Claim 2 is not in Brown or IBM, is it? The judge did not find it. That is my honest answer. If I search, I think it is there, but he said it was not, and we will go with that for today. Well, we will see. But it clearly is in Brown. The court says it is disingenuous to suggest it would have required a quantum leap of imagination to come up with that aspect. So, it was not there. Not in the IBM? Oh, it was in Brown. It was in Brown. The automatic searching when the new message comes in, when the new data comes in, it is in Brown. Absolutely. That is how he functions. That is one of the things that the judge found very substantial in Brown. That and the fact that he used the small database. He saw that as moving toward, I am going to call it that, this counter-intuitive of whatever. And all they are doing, Your Honor, if you think about it, is they are saying they are just going to use the new data. Okay, fine. One new data. But what are they doing with it? They are searching the criteria database in order to find out if there is a match. That is a traditional search. They are just changing the names. Well, if it is criteria, you have to save it and you have to use that side of the equation to search the database. But the database has only got one entry in it, like in Brown, which one is the criteria and which one is the data does not really matter. You have the same result. So, their invention is relabeling. You want to call it that. That is all it is. And the Brown reference has all of the other elements that he is talking about. On page 37 through 39 of the red brief, we have a claim chart. Every one of the elements that they said in the past were not there. We lay it out. We cite the column in line as to where it is. And so you can see it is there. Now, their expert basically gave an opinion based on looking for words. He used, it has got to be the exact word in order to disclose. For example, Brown says the message, the specified message,  or a group. He says, oh no, it does not disclose sending a message to more than one recipient. Because it says group. And everybody knows a group is one email address and the form only has one spot for an email address so it cannot be sending out to multiple recipients. Now, that is the kind of logic he uses to say these limitations are not there. They are there. They are in our chart. We do the same for the IBM reference also. But let's go back to the logic in what I think Judge Sparks did when he said claim one is so broad. He looked at claim one and said very general terms. I do not see any restrictions in here. Nothing about anything. You just compare A to B. If it is a match, you send a message. That is all it says. One to one. It does not matter which one is which. It does not have anything to do with save. It does not have anything to do with new. Any restrictions like that. Because it is just not there. Then he looks at claim two. And he says claim two says you are the method of claim one and the new data as it comes in is immediately compared to the search request. That has got to be what they are talking about. This counterintuitive thing is that you are taking one single new data form and you are comparing it to the search request. He said to make it work though, you have to have a database. You have to have a database of the criteria. The stored search criteria has to be there or it does not work. So it has to have a database. Stored database of search criteria. Then he said traditional search. Everybody knows how that works. You take your search criteria. You run it against the database. Boom, you find the matches. You have to have a database though. Stored forms. Stored data. You may not want to keep the search criteria. You can throw it away. That is okay. But you have to have the database for the forms in order to have something to search. So Judge Parks looks at it and says claim one does not have anything about databases. It could have two databases. It could have one on this side and none on this side. One on that side and none on this side. So it seems to me it is broader than the other two claims. And he compared it to claim eight and claim two. So it has got to cover both. It can cover both. You can have two databases or you can have the counterintuitive with a database over here or you can have the other traditional search with a database over here. It is not limited to either one. It covers both. And that is his claim construction. And he was right. He was correct. This argument about and I think they even in their reply brief even said the comparison engine is part of the claim. It has got to be read into the claim. No, it does not have to be read into the claim. His basis is well, there is another part of the specification that talks about optionally conducting a search to find or to handle the situation where you have a new search criteria and an old database full of forms. He said, oh, that is optional. You do not have to do it. Well, it does not say optional. It says optional but if you want to have a complete system and if you look at the diagrams they have got a complete system. They have two databases. So then he says, well, it does not say search engine but I know it has to be a search engine to do that. And therefore the search engine cannot be compared. But if you read Claim 8 you read Claim 8 one of the limitations of Claim 8 starts now. The comparing step of Claim 1 wherein the comparison uses a search engine to compare. So clearly within the scope of the claim it is in the claim. How could it be otherwise? What has happened here? He finally admitted it today that the gist of this invention is the messaging. Well, all that is gone now. It is not new. All this specified message stuff is all gone. It is all shown in all these references and we have got it in our charts. So the only thing they have got left is what you see in their briefs. This counter-intuitive. You did not hear anything about the gist of the invention messaging and all that because it is all there. They have now had to resort to this last line of defense which is this counter-intuitive approach. And now that is gone. Judge Barks saw through that relabeling approach that they are using and said, no, no, you had both of them. You were going to use both of them. You claimed both of them in Number 1 and you cannot disclaim. There is no disclaimer anywhere in this patent about the traditional. Now, if you read Claim 8 one of his arguments is well, that was an optional step and yeah, it is a dependent claim but it is optional and it does not well, I do not know what it is. It says the comparing step. The method of Claim 1 wherein the comparing step or including the comparing step includes using search engine to compare. Now, he says, oh, that is a separate additional comparing step. Optional, it is not an essential element. That is not how you read a dependent claim. It says the method of Claim 1 then it identifies that particular step in Claim 1 and says it includes this which has to be interpreted classically as it is a species of the comparing step that is in 1. And that is what they did. They had two ways of doing it. They claimed two ways of doing it. One in Claim 8 and one in Claim 2. Both of them in Claim 1. And if the traditional is in Claim 1 those claims are invalid. And if Claim 1 is invalid they have to have patentable distinctions in the dependent claims and they cannot show that in light of Brown and the other references. Now, as far as validity is concerned Judge Sparks did go through the four factors of Graham John Deere. The first two, field of art and the level of skill he simply adopted their definition. Just because he ultimately said it didn't make any difference which one to use but he used theirs he said. The other two he did compare. And he said secondary, well he said he looked at the differences he went through the analysis primarily with Brown and said I really don't see a whole lot of difference here and he said it's got a database so it must be an additional search. I'm saying that particular database is there because it's able to use different frequencies and if you use the monthly frequency then you need that database to store the new incoming messages until you get ready to do the search. But if you use the frequency of real time you don't need that database but it's there. And without it there's no storing of any incoming forms it's immediately searched it's immediately compared to the critical and it's the same thing as what they call counterintuitive although I don't think it's anything counterintuitive about it anyway. It's just one piece of information that needs to be compared to a group of information to see if there's a match. That's claim one that's what they say their invention is. Thank you. Thank you. Just to clarify in terms of Brown and IBM versus the counterintuitive method the district court found in his opinion on A11 and A12 that neither Brown nor IBM disclosed the counterintuitive method and the defendant in the red brief at page 53 conceded that point that the district court had so found. In terms of claim eight claim eight does not require a repeated search of the database. It does not the traditional method that was being distinguished that the patent starts off complaining about is that you have to go back and keep searching the same data and if you have 10,000 entries and you keep searching the same thing over and over and over that can be inefficient take up processing bandwidth. The invention as described and is claimed in claim eight and the other claims never repeats the same search of the same database. So if claim one were construed to encompass a system that searched a database repeatedly when a new entry came in searched the old historical data then it would be covering something we never described. In our flow charts and in our description never have that. And finally if I may in terms of message the three function template that was not something we came up with today. That was in our expert declaration and in particular in our expert declaration in opposition summary judgment at A748-49 and A756-A6758 Mr. McIravey explained why Brown and IBM do not disclose the three function web template do not disclose the ability to use the web template to specify the message and the district court never mentioned the expert declaration not once and never mentioned this feature that or the other features that we described just focused on the counterintuitive method. Thank you. Thank you Mr. Vandenberg and thank you Mr. Nation the case is taken into consideration that concludes the argument cases for this morning for this panel. All rise.